# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

UNITED STATES ex rel. MARTIN FLANAGAN,

Plaintiff-Appellant,

v.

FRESENIUS MEDICAL CARE HOLDINGS, INC., d/b/a Fresenius Medical Care North America,

Defendant-Appellee.

---

On Appeal from the United States District Court
for the District of Massachusetts

---

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
## IN SUPPORT OF NEITHER PARTY

---

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

JOSHUA S. LEVY
  *Acting United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH
DANIEL WINIK
  *Attorneys, Appellate Staff
  Civil Division, Room 7245
  U.S. Department of Justice
  950 Pennsylvania Avenue, NW
  Washington, DC 20530
  (202) 305-8849*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES...................................................................................ii

INTEREST OF THE UNITED STATES.......................................................1

STATEMENT OF THE CASE........................................................................2

    A.    Statutory Background.......................................................................2

    B.    This Litigation .................................................................................5

SUMMARY OF ARGUMENT........................................................................7

ARGUMENT ................................................................................................ 10

CLAIMS FOR THE TREATMENT OF PATIENTS REFERRED TO FRESENIUS BY KICKBACK RECIPIENTS ARE FALSE ........................................................ 10

CONCLUSION ............................................................................................. 21

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Burrage v. United States,*
571 U.S. 204 (2014) ...................................................................................16, 17, 18

*Guilfoile v. Shields,*
913 F.3d 178 (1st Cir. 2019) .......................................................................6, 13, 15

*Kuzma v. Northern Arizona Healthcare Corp.,*
607 F. Supp. 3d 942 (D. Ariz. 2022) ....................................................................15

*McNutt ex rel. United States v. Haleyville Medical Supplies, Inc.,*
423 F.3d 1256 (11th Cir. 2005) ........................................................................ 3, 11

*Paroline v. United States,*
572 U.S. 434 (2014) ...............................................................................................17

*United States v. Medtronic, Inc.,*
2021 WL 4168140 (D. Kan. Sept. 14, 2021) ........................................................15

*United States v. Patel,*
778 F.3d 607 (7th Cir. 2015) ........................................................................... 3, 10

*United States v. Regeneron Pharmaceuticals, Inc.,*
2020 WL 7130004 (D. Mass. Dec. 4, 2020) ..........................................................14

*United States v. Rogan,*
517 F.3d 449 (7th Cir. 2008) ................................................................................11

*United States v. Teva Pharmaceuticals USA, Inc.,*
2019 WL 1245656 (S.D.N.Y. Feb. 27, 2019) ........................................................15

*United States v. Teva Pharmaceuticals USA, Inc.,*
2023 WL 4565105 (D. Mass. July 14, 2023) ........................................................15

*United States ex rel. Bawduniak v. Biogen Idec, Inc.,*
2018 WL 1996829 (D. Mass. Apr. 27, 2018) ........................................................14

*United States ex rel. Brown v. Celgene Corp.,*
2014 WL 3605896 (C.D. Cal. July 10, 2014) .......................................................11

*United States ex rel. Cairns v. D.S. Medical LLC,*
42 F.4th 828 (8th Cir. 2022) .......................................................................16, 17, 20

*United States ex rel. Fesenmaier v. Cameron-Ehlen Group, Inc.,*
2023 WL 36174 (D. Minn. Jan. 4, 2023) .........................................................................20

*United States ex rel. Fitzer v. Allergan, Inc.,*
2022 WL 3599139 (D. Md. Aug. 23, 2022)...............................................15, 17, 18

*United States ex rel. Flanagan v. Fresenius Medical Care Holdings, Inc.,*
2022 WL 17417577 (D. Mass. Dec. 5, 2022).........................1, 5, 6, 7, 12, 13

*United States ex rel. Greenfield v. Medco Health Solutions, Inc.,*
880 F.3d 89 (3d Cir. 2018) .................................................................. 14, 15, 16, 18

*United States ex rel. Hueseman v. Professional Compounding Centers of America, Inc.,*
2023 WL 2669879 (W.D. Tex. Mar. 27, 2023) .........................................................20

*United States ex rel. Hutcheson v. Blackstone Medical, Inc.,*
647 F.3d 377 (1st Cir. 2011) ...............................................1, 3, 4, 11, 16, 19

*United States ex rel. Kester v. Novartis Pharmaceuticals Corp.,*
41 F. Supp. 3d 323 (S.D.N.Y. 2014) ..................................................................... 5, 15

*United States ex rel. Martin v. Hathaway,*
63 F.4th 1043 (6th Cir. 2023) ................................................................... 16, 17

*United States ex rel. Parikh v. Citizens Medical Center,*
977 F. Supp. 2d 654 (S.D. Tex. 2013) ...........................................................10-11, 18

*United States ex rel. Schutte v. SuperValu Inc.,*
143 S. Ct. 1391 (2023) .................................................................................................17

*United States ex rel. Thomas v. Bailey,*
2008 WL 4853630 (E.D. Ark. Nov. 6, 2008) ..........................................................4

*United States ex rel. Westmoreland v. Amgen, Inc.,*
812 F. Supp. 2d 39 (D. Mass. 2011) .........................................................................4

*United States ex rel. Wilkins v. United Health Group, Inc.,*
659 F.3d 295 (3d Cir. 2011) .......................................................................... 1, 3, 11

*Universal Health Services, Inc. v. United States,*
579 U.S. 176 (2016)........................................................................................................4

**Statutes:**

False Claims Act (FCA):
    31 U.S.C. § 3729(a)(1)(A) ....................................................................................2
    31 U.S.C. § 3729(a)(1)(B) ....................................................................................3
    31 U.S.C. § 3730(a) ..............................................................................................2
    31 U.S.C. § 3730(b)(1) ........................................................................................2
    31 U.S.C. § 3730(b)(2) ........................................................................................6

42 U.S.C. § 1320a-7b(b)(1) ..........................................................................3, 15, 17, 19

42 U.S.C. § 1320a-7b(b)(2) ............................................... 3, 8, 12, 15, 16, 17, 19

42 U.S.C. § 1320a-7b(g) ................................................................................... 4, 11

**Legislative Materials:**

155 Cong. Rec. S10,853 (daily ed. Oct. 28, 2009) ..................................................4, 4-5, 18

## INTEREST OF THE UNITED STATES

The Anti-Kickback Statute (AKS) plays an essential role in protecting the integrity of medical care by ensuring that beneficiaries of federal healthcare programs receive care from providers who do not have potential financial conflicts. Relator alleges that Fresenius Medical Care North America, one of the Nation's leading providers of dialysis services, violated the AKS by "provid[ing] free or below-cost services to hospitals and physicians, and ma[king] various types of improper payments to physicians, in exchange for referrals to its dialysis clinics." *United States ex rel. Flanagan v. Fresenius Med. Care Holdings, Inc.*, 2022 WL 17417577, at *1 (D. Mass. Dec. 5, 2022).

If Fresenius violated the AKS in that manner, then claims to federal healthcare programs for the dialysis treatments that it provided to patients referred by the financially conflicted doctors and hospitals are false or fraudulent within the meaning of the False Claims Act (FCA). This Court and other courts have long recognized that compliance with the AKS "is a precondition" of reimbursement from federal healthcare programs, *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 393 (1st Cir. 2011), and that "'[t]he Government does not get what it bargained for when a defendant is paid … for services tainted by a kickback,'" *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 314 (3d Cir. 2011), *abrogated on other grounds by Universal Health Servs., Inc. v. United States*, 579 U.S. 176 (2016). If the services here were tainted by kickbacks, then the government did not get what it paid for—regardless of whether the

patients in question might have been referred to Fresenius's clinics even if it had not violated the law.

To the extent the district court expressed a contrary understanding of falsity, in the course of determining whether relator pleaded his claims against Fresenius with the particularity required by Rule 9(b), this Court should reject that understanding: It is inconsistent with the AKS's statutory scheme and would undercut the United States' strong interest in preserving the vitality of the FCA as a mechanism for ensuring that federal healthcare programs do not pay for items and services that were the subject of illegal kickbacks. The United States takes no position on whether the dismissal of the suit should be affirmed on other grounds.

## STATEMENT OF THE CASE

### A.      Statutory Background

The FCA imposes liability on, among others, anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). FCA actions may be brought by the Attorney General or by a private *qui tam* relator in the name of the United States. *Id.* § 3730(a), (b)(1).

The AKS imposes criminal liability on any person who (1) "knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) … in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program"; or (2) "knowingly and willfully offers or pays any

remuneration … to any person to induce such person[] … to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(1), (2).

The AKS serves to protect patients "from doctors whose medical judgments *might* be clouded by improper financial considerations," *United States v. Patel*, 778 F.3d 607, 612 (7th Cir. 2015) (emphasis added), in recognition of the fact that it is often difficult to ascertain what judgments a provider would have made in the absence of the kickback. Courts have accordingly recognized, as noted above, that "'[t]he Government does not get what it bargained for when a defendant is paid by [Medicare or Medicaid] for services tainted by a kickback,'" whether or not it can show that a conflict-free provider would have given the same care. *Wilkins*, 659 F.3d at 314.

It is well established that AKS violations can lead to FCA liability. *See, e.g.*, *Wilkins*, 659 F.3d at 313; *Hutcheson*, 647 F.3d at 392-394; *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005). Such liability can be established in multiple ways. Where a provider expressly but falsely certifies in requesting payment that it has complied with the AKS, that certification is actionable as a "false record or statement" material to the provider's claim. 31 U.S.C. § 3729(a)(1)(B). Even without an express certification, a provider can be liable under the FCA where it "makes specific representations about the goods or services provided" but "fail[s] to disclose noncompliance with material statutory, regulatory, or contractual requirements" in a

way that "makes those representations misleading half-truths." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 190 (2016). This Court accepted such a theory of liability in *Hutcheson*. 647 F.3d at 392-394; *see also, e.g.*, *United States ex rel. Westmoreland v. Amgen, Inc.*, 812 F. Supp. 2d 39, 54 (D. Mass. 2011) ("[C]ourts, without exception, agree that compliance with the [AKS] is a precondition of Medicare payment, such that liability under the [FCA] can be predicated on a violation of the [AKS].").

In 2010, Congress amended the AKS to add an additional way of establishing FCA liability for AKS violations. The amendment states that "[i]n addition to" the AKS's criminal penalties and the remedies available under § 1320a-7a, any "claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of" the FCA. 42 U.S.C. § 1320a-7b(g). A sponsor explained that the amendment was meant to "strengthen[] whistleblower actions based on medical care kickbacks" by overruling a then-recent decision—*United States ex rel. Thomas v. Bailey*, 2008 WL 4853630 (E.D. Ark. Nov. 6, 2008)—that had found a hospital's reimbursement claims for surgeries were not false, even though the surgeon had violated the AKS, because the hospital had not itself violated the AKS or been aware of the surgeon's violation. 155 Cong. Rec. S10,853 (daily ed. Oct. 28, 2009) (Sen. Kaufman). The amendment would make clear, the sponsor explained, "that all claims resulting from illegal kickbacks are 'false or fraudulent,' even when the claims are not submitted directly by the wrongdoers themselves." *Id.*; *see id.* at S10,854 (Sen. Leahy,

making the same point); *see also, e.g., United States ex rel. Kester v. Novartis Pharm. Corp.*, 41 F. Supp. 3d 323, 333 (S.D.N.Y. 2014) (discussing this legislative history).

**B.    This Litigation**

1.    Fresenius Medical Care North America is a leading provider of dialysis services in the United States. 2022 WL 17417577, at *2. Relator Martin Flanagan, who worked for Fresenius for nearly three decades, brought this suit against Fresenius under the FCA's qui tam provisions in 2014. *Id.* at *2, *5. He alleges that Fresenius gave various forms of remuneration to hospitals and doctors to induce referrals to its clinics, in violation of the AKS. *Id.* at *1. As relevant here, the complaint alleges that Fresenius gave hospitals below-cost dialysis services, and paid above-market compensation to physicians who served as medical directors for its clinics, in order to induce those hospitals and doctors to refer more patients to Fresenius for dialysis services. *Id.* at *3; *see* Relator's Br. 5-9.

Relator alleges that "[a]ny claims submitted for services Fresenius rendered to the patients who were referred to Fresenius clinics through the operation of this scheme are false claims within the meaning of the FCA." App. 766 ¶ 127 (discussing Fresenius's provision of below-cost services to hospitals); *see id.* at 780 ¶ 166 (same); *id.* at 808 ¶ 229 (above-market medical director compensation); *id.* at 810 ¶ 233, 812 ¶ 238, 821 ¶ 257, 827 ¶ 274, 829 ¶ 284, 830-831 ¶ 286, 833 ¶ 293, 837 ¶ 304 (same). The complaint does not plead details of specific allegedly false claims. It accuses Fresenius of knowingly presenting or causing the presentment of false claims, making or causing the making

of false records material to false claims, and conspiring with physicians and hospitals to violate the FCA. *Id.* at 861-863.

2. The district court dismissed the suit on several grounds. 2022 WL 17417577. The court held that certain allegations were "not substantially similar to the allegations in the initial complaint," *id.* at *8, and that relator failed to comply with the FCA's pre-suit requirements, 31 U.S.C. § 3730(b)(2), in amending the complaint. The court accordingly held that those allegations could not proceed. The court also held that certain allegations were precluded by the public-disclosure and first-to-file bars. 2022 WL 17417577, at *11-12. Relator does not appeal those holdings.

This brief addresses only the district court's observation regarding the requisite causal nexus between an alleged AKS violation and an allegedly false claim, in the course of its holding that relator failed to satisfy Rule 9(b)'s requirement of particularity in pleading. The court acknowledged "that a violation of the Anti-Kickback Statute 'that results in a federal health care payment is a *per se* false claim.'" *Id.* at *18 (quoting *Guilfoile v. Shields*, 913 F.3d 178, 190 (1st Cir. 2019)). But "[i]t does not follow," the court reasoned, "that where there is an AKS violation, the requirement of establishing a false claim evaporates." *Id.* The court elaborated: "One problem lies in the phrase 'results in'—that is, the requirement of causation. Suppose, for example, that in a world free from kickbacks, 25% of the dialysis services business of [Fresenius] would have been captured by competitors. Rule 9(b) requires that a relator plausibly allege that specific payments concerning specific patients were caused by the AKS violation." *Id.* The

court appears to have believed that claims "concerning specific patients" treated by Fresenius could be regarded as "caused by the AKS violation" only if the patients were among the 25% who would have been referred to one of Fresenius's competitors in the absence of kickbacks. *Id.*

After expressing that understanding of falsity, the court found relator's allegations insufficiently particular, explaining that they do not "identify a specific physician who made a specific referral as a result of a specific unlawful practice that resulted in a specific false claim." *Id.* at *19.

The court then denied leave to amend the complaint. Dkt. 56.

## SUMMARY OF ARGUMENT

1. In enacting the AKS, Congress forbade financial conflicts themselves, recognizing that it is often difficult to discern whether a conflict actually caused a provider to make different medical decisions. The AKS accordingly does not require that a kickback be successful—*i.e.*, that it actually cause the recipient to provide referrals, items, or services that would not have otherwise been provided—in order to be illegal. When remuneration is given to induce referrals or the provision of items or services, and those intended results of the remuneration come to pass, claims for those items or services (or items or services provided in the course of those referrals) are ineligible for payment, even absent proof that the referrals, items, or services in question would not have been provided but for the financial conflict. That is because kickbacks make it

impossible to trust that the referrals, items, or services were provided in the patients' best interests rather than motivated by improper financial incentives.

2.    Here, assuming the truth of the allegations, Fresenius gave kickbacks to certain doctors and hospitals "to induce" those doctors and hospitals to refer patients to Fresenius for dialysis services, 42 U.S.C. § 1320a-7b(b)(2), and the intended referrals came to pass.  Claims for dialysis services provided to patients who were referred to Fresenius by recipients of its kickbacks are thus false or fraudulent for purposes of the FCA.

The district court held that relator failed to plead his claims against Fresenius with the specificity required by Rule 9(b).  In the course of reaching that conclusion, the court appears to have construed § 1320a-7b(g)'s "resulting from" language to mean that the claims here would be false or fraudulent only if they were for patients who would not have been referred to Fresenius but for the alleged AKS violations.  It is not clear whether that reasoning was essential to the court's application of Rule 9(b).  But this Court should reject it, whether or not the Court otherwise affirms the district court's conclusion that the complaint lacks adequate particularity.  This Court's decision in *Guilfoile* approvingly cites a decision adopting the correct standard discussed above: that when remuneration is given to induce referrals or the provision of items or services, and those intended results come to pass, claims seeking reimbursement for the items or services (or those provided in the course of the referrals) are false or fraudulent.  And the same district court reached that correct conclusion in a prior opinion.

The Sixth and Eighth Circuits have recently construed § 1320a-7b(g)'s "resulting from" language, as the district court appears to have understood that language here, to require proof that the claimed items or services would not have been provided but for an AKS violation. But those decisions failed to account for the strong contextual evidence that § 1320a-7b(g) does not require but-for causation—a conclusion that is wholly consistent with the text of the AKS.

In any event, the district court's understanding of falsity would still have been incorrect even if its apparent view of § 1320a-7b(g) were correct, because this case—unlike those in the Sixth and Eighth Circuits—presents an alternate theory of falsity that does not depend on § 1320a-7b(g). As noted above, courts had long recognized before the enactment of § 1320a-7b(g) that, because the government agrees to pay only for conflict-free medical care, a violation of the AKS renders subsequent claims for goods and services tainted by the AKS violation false. This Court adopted such a theory in *Hutcheson*. The complaint here pleads a basis for liability under that theory, which was not displaced by the enactment of § 1320a-7b(g). That provision simply creates an additional path by which plaintiffs can prove a violation of the FCA; it does not insulate defendants from liability for knowingly billing the government for goods and services tainted by financial conflicts.

# ARGUMENT

## CLAIMS FOR THE TREATMENT OF PATIENTS REFERRED TO FRESENIUS BY KICKBACK RECIPIENTS ARE FALSE

The United States takes no position on whether relator pleaded his claims with the particularity required by Rule 9(b) or on whether the district court erred in denying leave to amend. But regardless of how the Court resolves those issues, it should reject the district court's apparent view that claims for dialysis care of patients referred to Fresenius by kickback recipients were not false for FCA purposes absent specific allegations that those patients would have been referred to a different provider but for the kickbacks. If Fresenius gave kickbacks to doctors and hospitals to induce them to refer patients to Fresenius for particular kinds of treatments or services, and the kickback recipients subsequently did refer patients to Fresenius for those treatments or services, then claims for care provided to those patients are false or fraudulent. That is true whether or not the patients would have been referred elsewhere absent the kickbacks.

1.      The AKS protects patients "from doctors whose medical judgments *might* be clouded by improper financial considerations." *Patel*, 778 F.3d at 612 (emphasis added). Congress's decision to forbid the conflict itself reflects that it can frequently be difficult to discern why a provider made a particular medical decision. The AKS accordingly does not require that a kickback be successful or that the items, services, or referrals in question would not have otherwise been provided in order for the kickback to be illegal. *See, e.g.*, *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654,

665 (S.D. Tex. 2013) ("The AKS's plain language … makes it unlawful for a defendant to pay a kickback with the intent to induce a referral, whether or not a particular referral results."), *aff'd sub nom. United States ex rel. Parikh v. Brown*, 587 F. App'x 123 (5th Cir. 2014). And given Congress's choice to forbid potential conflicts in and of themselves, it is plain that "'[t]he Government does not get what it bargained for when a defendant is paid by [Medicare or Medicaid] for services tainted by a kickback,'" whether or not a conflict-free provider might have given the same care. *Wilkins*, 659 F.3d at 314; *see also, e.g., United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (Medicare and Medicaid "offer[] a subsidy … with conditions").

As noted above, Congress has expressly provided that any "claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of" the FCA. 42 U.S.C. § 1320a-7b(g). And even before the enactment of § 1320a-7b(g), courts had long "held that non-compliance with the AKS rendered a claim non-payable and that a FCA claim could therefore be premised on an AKS violation." *United States ex rel. Brown v. Celgene Corp.*, 2014 WL 3605896, at *7 (C.D. Cal. July 10, 2014) (citing among others *Wilkins*, 659 F.3d at 313-314, and *McNutt*, 423 F.3d at 1259). This Court agreed with that theory of FCA liability in *Hutcheson*, where it held that even claims submitted by providers with no knowledge of the underlying kickbacks provided by a device manufacturer were nevertheless false or fraudulent because they expressly and impliedly misrepresented compliance with a core condition of payment under Medicare: compliance with the AKS. 647 F.3d at 392-394. When

remuneration is given to induce referrals or the provision of items or services, and those intended results of the remuneration come to pass, claims for those items or services (or items or services provided in the course of those referrals) are false; they are not eligible for payment by Medicare or Medicaid.

2. The district court held that relator had failed to plead his claims against Fresenius with the particularity required by Rule 9(b). In the course of reaching that conclusion, the court appears to have construed § 1320a-7b(g)'s "resulting from" language to mean that the claims here would be false or fraudulent only if they were for patients who would not have been referred to Fresenius but for the alleged AKS violations. It is not clear whether that reasoning was necessary to the court's application of Rule 9(b), which rested more generally on the ground that "the complaint does not include a single allegation concerning a single specific false claim," 2022 WL 14717577, at *18. But regardless of how it otherwise resolves the Rule 9(b) issue, this Court should reject the district court's apparent view that the complaint did not adequately plead the falsity of the claims at issue. Assuming the truth of the allegations, Fresenius gave kickbacks to doctors and hospitals "to induce" those doctors and hospitals to refer patients to Fresenius for dialysis services, 42 U.S.C. § 1320a-7b(b)(2), and the intended referrals came to pass. Claims for the items and services provided to patients who were referred to Fresenius by recipients of its kickbacks are false or fraudulent for purposes of the FCA, because the government has agreed to pay only for care that is free of financial conflicts.

a. The district court's contrary understanding of falsity appeared to rest on the phrase "results in," which it culled from this Court's observation in *Guilfoile* that an AKS violation "'that results in a federal health care payment is a *per se* false claim.'" 2022 WL 17417577, at *18 (quoting *Guilfoile v. Shields*, 913 F.3d 178, 190 (1st Cir. 2019)). That phrase in *Guilfoile* is itself a paraphrase of § 1320a-7b(g), which provides that any "claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of" the FCA. Without any explanation, the district court appears to have concluded that claims would "result[] from" the AKS violations alleged here only if they were for patients who would not have been referred to Fresenius but for those AKS violations. *See* 2022 WL 17417577, at *18 ("Suppose … that in a world free from kickbacks, 25% of the dialysis services business of [Fresenius] would have been captured by competitors. Rule 9(b) requires that a relator plausibly allege that specific payments concerning specific patients were caused by the AKS violation— that is, that they were part of the 25% of the claims that resulted from a violation, not the 75% that were not.").

But *Guilfoile* counsels strongly against the district court's apparent understanding of § 1320a-7b(g). Although that case involved "an FCA *retaliation* claim, not a 'direct' claim of an FCA violation"—and although the Court accordingly did not "attempt to assess the full implications of" § 1320a-7b(g)—the Court approvingly cited two cases for the proposition that "if there is a sufficient causal connection between an AKS violation and a claim submitted to the federal government, that claim is false within the

meaning of the FCA." 913 F.3d at 190. One was *United States ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 96 (3d Cir. 2018), where the Third Circuit squarely rejected the requirement of but-for causation that the district court appeared to agree with here, *id.* at 95-98. The other was *United States ex rel. Bawduniak v. Biogen Idec, Inc.*, 2018 WL 1996829 (D. Mass. Apr. 27, 2018), which correctly recognized that a plaintiff can establish falsity for FCA claims based on AKS violations by showing that the defendant "paid kickbacks to a physician for the purpose of inducing the physician to prescribe specific drugs, and that the physician then prescribed those drugs, *even if* the physician would have prescribed those drugs absent the kickback." 2018 WL 1996829, at *3.

Indeed, the district court here had previously adopted the same correct understanding of the required causal nexus. In *United States v. Regeneron Pharmaceuticals, Inc.*, 2020 WL 7130004 (D. Mass. Dec. 4, 2020) (Saylor, C.J.), the court denied a motion to dismiss FCA claims based on alleged AKS violations, writing that "the complaint need not allege that the kickbacks actually corrupted clinical decision-making or provide 'proof that the underlying medical care would not have been provided but for a kickback.'" *Id.* at *11 (quoting *Greenfield*, 880 F.3d at 96). The court then quoted *Bawduniak* for the correct causation standard. *Id.* (quoting 2018 WL 1996829, at *3).

The decisions in *Bawduniak* and *Regeneron*, bolstered by this Court's favorable citation of *Bawduniak* in *Guilfoile*, correctly interpret § 1320a-7b(g)'s "resulting from" language. As noted above, the AKS expressly specifies a nexus standard: Remuneration

can support liability under the AKS when it is solicited or received "in return for," or offered or paid with the intent "to induce," referrals or the provision of items or services. 42 U.S.C. § 1320a-7b(b)(1), (2). When those intended results of a kickback materialize, it is natural to conclude that they "result[ed] from" the kickback within the meaning of § 1320a-7b(g), without any additional showing about what would have occurred absent the kickback. Other courts have adopted the same standard. *See, e.g.*, *United States ex rel. Fitzer v. Allergan, Inc.*, 2022 WL 3599139, at *9 (D. Md. Aug. 23, 2022); *Kuzma v. Northern Ariz. Healthcare Corp.*, 607 F. Supp. 3d 942, 956 (D. Ariz. 2022); *United States v. Teva Pharm. USA, Inc.*, 2019 WL 1245656, at *27 (S.D.N.Y. Feb. 27, 2019); *see also United States v. Teva Pharm. USA, Inc.*, 2023 WL 4565105, at *4 (D. Mass. July 14, 2023) (rejecting a but-for causation requirement); *United States v. Medtronic, Inc.*, 2021 WL 4168140, at *23-24 (D. Kan. Sept. 14, 2021) (same); *Kester*, 41 F. Supp. 3d at 331-335 (same).

As the Court recognized in *Guilfoile*, this standard does require a "causal connection between an AKS violation" and an allegedly false claim. 913 F.3d at 190. That is illustrated by *Greenfield*, where the relator claimed that the defendant pharmacy had paid kickbacks to charities in exchange for their recommending its services, 880 F.3d at 92, but there was no evidence at summary judgment that any of the patients at issue had been exposed to the improper recommendations, *id.* at 99-100. The Third Circuit concluded—as the United States had urged as amicus—that mere "temporal proximity between [the] alleged kickback plot and the submission of claims for reimbursement"

was not enough for the claims to be considered false and that "the evidence [did] not link [the defendant's] alleged kickback scheme to any particular claim." *Id.* at 100.

Here, by contrast, the allegations establish the linkage that was missing in *Greenfield*. Taking relator's allegations as true, Fresenius gave kickbacks "to induce" referrals, 42 U.S.C. § 1320a-7b(b)(2), and the intended referrals came to pass. The patients for whom Fresenius allegedly submitted false Medicare and Medicaid claims were exactly the patients that Fresenius allegedly paid doctors and hospitals to refer. Those patients were exposed to the alleged kickbacks—whether or not they might have been referred to Fresenius absent the kickbacks—in the way that the patients in *Greenfield* were not. Claims for dialysis services provided to those patients are thus false or fraudulent within the meaning of the FCA because the underlying transactions violated the AKS and "the resulting claims were ineligible for payment." *Hutcheson*, 647 F.3d at 393.

b.   Two recent decisions of other appellate courts, which the district court here did not cite, have interpreted § 1320a-7b(g)'s "resulting from" language as requiring proof that the claimed items or services would not have been provided but for an AKS violation. *United States ex rel. Martin v. Hathaway*, 63 F.4th 1043 (6th Cir. 2023); *United States ex rel. Cairns v. D.S. Medical LLC*, 42 F.4th 828 (8th Cir. 2022). Both courts based that conclusion on the Supreme Court's holding in *Burrage v. United States*, 571 U.S. 204 (2014), that the phrase "'[r]esults from' imposes … a requirement of actual causality" (*i.e.*, causation in fact) and that, "'[i]n the usual course,'" causation in fact means that a given outcome "would not have occurred in the absence of—that is, but

for"—a given event.  *Id.* at 211 (quotation marks omitted); *see Martin*, 63 F.4th at 1052-1053; *Cairns*, 42 F.4th at 834-835.

But the Supreme Court has also recognized that the "but-for test" is nothing more than a "default" standard of causation in fact.  *Paroline v. United States*, 572 U.S. 434, 458 (2014).  Other such standards exist, and "the availability of alternative causal standards where circumstances warrant is, no less than the but-for test itself as a default, part of the background legal tradition against which Congress has legislated."  *Id.*  Thus, as *Burrage* itself explains, courts properly "read phrases like 'results from' to require but-for causality" only if "there is no textual or contextual indication to the contrary."  571 U.S. at 212.  The Supreme Court has also recently emphasized, in an FCA case, the importance of construing statutory terms "in their particular … context."  *United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391, 1402 (2023).

As another court observed in rejecting the Eighth Circuit's analysis, *Fitzer*, 2022 WL 3599139, at *10, neither the Sixth nor the Eighth Circuit considered the powerful "contextual indication[s]," *Burrage*, 571 U.S. at 212, that § 1320a-7b(g) does not require proof of but-for causation.  As discussed above, the AKS contains its own nexus requirement:  Remuneration can support liability when it is solicited or received "in return for," or offered or paid with the intent "to induce," the provision of items or services or referrals to provide them.  42 U.S.C. § 1320a-7b(b)(1), (2).  As its "plain language" makes clear, that standard does not limit AKS liability to situations where the desired outcome of the kickbacks actually materializes, much less where the kickback is the but-

for cause of the outcome. *Parikh*, 977 F. Supp. 2d at 665. Such a limitation would be inconsistent with the AKS's animating principle, namely that financial conflicts make it impossible to trust that treatment or referral decisions were motivated solely by the best interests of the patient, whether or not such conflicts can actually be shown to have altered the provider's specific treatment or referral choices. When Congress enacted § 1320a-7b(g) as an amendment to the AKS, it thus built on an existing statutory scheme under which the propriety of particular payments turns on the presence or absence of a specified nexus between those payments and items or services for which federal reimbursement may be available. Section 1320a-7b(g)'s presence within a statute that requires a specified link between a kickback and a given outcome, but that does *not* require but-for causation, suggests that that provision's "resulting from" language likewise does not require a showing of but-for causation.

Other "contextual" factors, *Burrage*, 571 U.S. at 212, bolster that inference. There is no basis to believe that Congress—having imposed *criminal* liability for AKS violations, including even unaccepted offers to pay kickbacks, without requiring but-for causation—meant to require that heightened showing to impose *civil* liability under the FCA for claims rendered false by AKS violations. *See Greenfield*, 880 F.3d at 96; *Fitzer*, 2022 WL 3599139, at *10. And such a standard it would be flatly inconsistent with the legislative history of § 1320a-7b(g), which makes clear that Congress enacted that provision to "strengthen[] whistleblower actions based on medical care kickbacks." 155 Cong. Rec. S10,853; *see supra* pp. 4-5.

These considerations strongly suggest that § 1320a-7b(g) does not impose the but-for causation standard that the Sixth and Eighth Circuits adopted. There is a much more natural interpretation of "resulting from" that is consistent with the text of the AKS. Remuneration can support liability under the AKS when it is solicited or received "in return for," or offered or paid with the intent "to induce," referrals or the provision of items or services. 42 U.S.C. § 1320a-7b(b)(1), (2). When those intended results of a kickback actually materialize, as they did here, it makes sense to conclude that they "result[ed] from" the kickback within the meaning of § 1320a-7b(g), without any additional showing about what would have occurred absent the kickback.

c.    In any event, even if § 1320a-7b(g) were properly understood to require a showing of but-for causation, the district court's apparent understanding of falsity based on that provision would still have been incorrect, because falsity may be pleaded without reliance on § 1320a-7b(g) in FCA claims based on AKS violations.

As noted above, courts had long recognized before the enactment of § 1320a-7b(g) that, because the government agrees to pay only for conflict-free medical care, a provider's violation of the AKS can render that provider's claims false or fraudulent. In *Hutcheson*, for example, this Court recognized that even claims submitted by providers that had no knowledge of underlying kickbacks were false or fraudulent because they misrepresented compliance with the AKS. 647 F.3d at 392-394. Relator explains (Br. 43-44) that he alleges falsity under "the pre-2010 case law" as well as under § 1320a-7b(g).

Neither *Cairns* nor *Martin* casts doubt on the continued viability, in FCA cases based on AKS violations, of falsity theories not dependent on § 1320a-7b(g). In both appeals, plaintiffs' assertions of falsity rested solely on § 1320a-7b(g). The Eighth Circuit thus expressly emphasized that its ruling was "narrow," applying only "when a plaintiff seeks to establish falsity or fraud through" § 1320a-7b(g). 42 F.4th at 836. And a district court in the Eighth Circuit has since recognized that the causation standard articulated in *Cairns* does not apply where plaintiffs seek to establish falsity under other theories. *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, 2023 WL 36174, at *2-3 (D. Minn. Jan. 4, 2023); *see also United States ex rel. Hueseman v. Professional Compounding Ctrs. of Am., Inc.*, 2023 WL 2669879, at *10 n.4 (W.D. Tex. Mar. 27, 2023) (suggesting the same). Section 1320a-7b(g) simply provides an additional avenue by which plaintiffs can prove a violation of the FCA.

Alleging falsity under the theories predating § 1320a-7b(g) does not obviate the need to establish a nexus between AKS violations and specific claims for federal reimbursement. But the showing of a causal nexus does not require proof that the claimed items or services would not have been provided but for the AKS violation. If Fresenius violated the AKS by giving kickbacks to a particular hospital or doctor for the purpose of inducing referrals from that hospital or doctor, and Fresenius subsequently sought federal reimbursement for treatment provided to patients referred by that hospital or doctor, then those reimbursement claims would be false to the extent they represented that Fresenius had complied with the AKS. The representation of compliance would

be false even if the hospital or doctor might still have referred the patients to Fresenius in the absence of the AKS violation, because that is immaterial to whether Fresenius violated the AKS.

## CONCLUSION

Regardless of how this Court resolves the other issues in this appeal, it should explicitly reject the district court's view that claims for Fresenius's dialysis treatment would be false only for patients who would not have been referred to Fresenius but for the alleged kickbacks.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
    General*

JOSHUA S. LEVY
  *Acting United States Attorney*

MICHAEL S. RAAB
CHARLES W. SCARBOROUGH

 */s/ Daniel Winik*
DANIEL WINIK
  *Attorneys, Appellate Staff
  Civil Division, Room 7245
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-8849
  daniel.l.winik@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 5,517 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Garamond, a proportionally spaced typeface.

*/s/ Daniel Winik*
Daniel Winik